UNITED STATES BANKRUPTCY COURT
DISTRICT OF SOUTH DAKOTA

| | | |
|---|---|---|
| In re: | ) | Bankr. No. 07-50303 |
| | ) | Chapter 7 |
| ALVIN JAMES FALZERANO | ) | |
| SSN/ITIN xxx-xx-8222 | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |
| JOHN S. LOVALD, TRUSTEE | ) | Adv. No. 09-5013 |
| | ) | |
| Plaintiff-Counter Defendant. | ) | |
| | ) | |
| -vs- | ) | |
| | ) | |
| ALVIN JAMES FALZERANO; | ) | |
| GERALD WAYNE FALZERANO; | ) | |
| THE FALZERANO CHILDREN'S TRUST, | ) | |
| by and through its Trustees, | ) | |
| Warren Falzerano, Vanessa Falzerano, | ) | |
| and Douglas Falzerano | ) | |
| | ) | DECISION RE: |
| Defendants. | ) | COMPLAINT AND |
| | ) | COUNTERCLAIM |
| DOUGLAS DEAN FALZERANO; | ) | |
| WARREN CRAIG FALZERANO; | ) | |
| LAURA L. FOX; | ) | |
| LORELIE LYNN BARTH; | ) | |
| VANESSA MICHELLE FALZERANO; | ) | |
| and THE THERESA ANN FALZERANO | ) | |
| ESTATE, by and through its Personal | ) | |
| Representative, Laura L. Fox | ) | |
| | ) | |
| Defendants-Counter Claimants. | ) | |

The matters before the Court are Trustee–Plaintiff–Counter Defendant John S. Lovald's complaint against Defendants Alvin James Falzerano, Gerald Wayne Falzerano, and the Falzerano Children's Trust and Defendants–Counter Claimants Douglas Dean Falzerano, Warren Craig Falzerano, Laura L. Fox, Lorelie Lynn Barth,

Vanessa Michelle Falzerano, and the Theresa Ann Falzerano Estate and Defendants–Counter Claimants Douglas Dean Falzerano, Warren Craig Falzerano, Laura L. Fox, Lorelie Lynn Barth, Vanessa Michelle Falzerano, and the Theresa Ann Falzerano Estate's counterclaim against Trustee–Plaintiff–Counter Defendant John S. Lovald. This is a core proceeding under 28 U.S.C. § 157(b)(2). These findings and conclusions are entered pursuant to Fed.R.Bankr.P. 7052. For the reasons discussed below, an order will be entered dismissing both the complaint and the counterclaim.

I.

Debtor–Defendant Alvin James Falzerano ("Debtor") and Theresa Ann Falzerano ("Theresa") were husband and wife. In May 2001, Debtor made arrangements to purchase hay from Orand Liebelt ("Liebelt"). Theresa gave Liebelt a $1,000.00 down payment.

Theresa passed away on December 4, 2001. In her will, she left Debtor a life estate in 320 acres of real estate ("the ranch"). She left her children, Defendant–Counter Claimant Douglas Dean Falzerano ("Douglas"), Defendant–Counter Claimant Laura L. Fox ("Laura"), Defendant Gerald Wayne Falzerano ("Gerald"),[1] and Defendant–Counter Claimant Warren Craig Falzerano ("Warren"), and her grandchild, Defendant–Counter Claimant Vanessa Michelle Falzerano ("Vanessa"),[2] (collectively, "the heirs") her cattle and all her other property, including the remainder interest in the ranch. Her probate estate remains open; no distribution has been made to the heirs.

---

[1] Gerald is deceased.

[2] Vanessa is the daughter of Defendant–Counter Claimant Lorelie Lynn Barth ("Lorelie"), who was intentionally omitted from Theresa's will.

On December 7, 2001, Debtor, the heirs, and Lorelie entered into a family settlement agreement.  Under the family settlement agreement, Laura, as the probate estate's personal representative,[3] was permitted to "distribute such items of [Theresa's] personal property as she deem[ed] necessary or advisable" to the heirs, and Debtor was permitted to keep and use Theresa's remaining personal property until he no longer needed or wished to do so, at which time it would be distributed to the heirs.  Debtor was likewise permitted to "run [Theresa's] cattle herd and raise the cattle for the heirs" and "use the profits from the land and cattle for his own living expenses" on certain conditions, most of which had to do with a trust (denominated "The Falzerano Children's Trust") that was never created.[4]

Following Theresa's passing, Debtor continued to manage the cattle operation. In addition to caring for some 107 head of the probate estate's cattle,[5] Debtor had an arrangement with Gladys Bonefield ("Bonefield") to pasture approximately 70 head of her cattle in return for a share of her calf crop and a similar arrangement with Dennis Wentzel ("Wentzel") to pasture approximately 80 head of his cattle in return for a share of his calf crop.  Debtor kept the probate estate's cattle on the ranch during the

---

[3] Laura is no longer the probate estate's personal representative.  Douglas assumed that responsibility sometime around May 2010.

[4] The Falzerano Children's Trust was nevertheless named as – and remains – a defendant herein.

[5] Throughout his post-trial brief, Trustee Lovald refers to Theresa's cattle as "the heirs'/Estate cattle."  Presumably, this was meant to suggest – without explicitly stating – the cattle may have belonged to the heirs.  However, the record (including Douglas's testimony and the probate estate's federal income tax returns) clearly demonstrates Theresa's cattle have not been distributed to the heirs.

winter (six months) and kept them on a neighbor's land during the summer (six months).  He kept Bonefield's cattle on the ranch during the winter and kept them on "the Indian reservation" during the summer.  He kept Wentzel's cattle on the ranch during winter and returned them to Wentzel during the summer.

The hay purchased from Liebelt was delivered to the ranch in December 2001 and January 2002 and was fed to the probate estate's cattle, Bonefield's cattle, and Wentzel's cattle in 2002 and 2003.  Debtor testified the hay was "very poor" and he only fed it to the cattle "because hay was hard to find then or otherwise [he] wouldn't have used it at all."  Douglas agreed with Debtor's assessment and "wondered why [Debtor] even bothered to haul it home."  Warren described the hay as "junk" and said he "wouldn't have fed it to [his] livestock."  Debtor refused to pay Liebelt for the hay, and Liebelt sued Debtor in state court.  Debtor filed, but did not serve, a third-party complaint against the probate estate.  On September 6, 2007, following a jury trial, the state court entered a judgment awarding Liebelt $10,000.00, pre– and post–judgment interest, and costs.

On November 16, 2007, Debtor filed a petition for relief under chapter 7 of the bankruptcy code.  Trustee–Plaintiff–Counter Defendant John S. Lovald ("Trustee Lovald") was appointed trustee.  Trustee Lovald commenced this adversary proceeding, and a trial was held.

II.

By his complaint, Trustee Lovald seeks to recover under 11 U.S.C. § 542(a)[6]

---

[6] Pursuant to § 542(a), "an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or

money allegedly owed to Debtor on the petition date by the probate estate and the heirs.  Trustee Lovald claims the probate estate and the heirs were unjustly enriched[7] by the value of the hay that was fed to the probate estate's cattle and by the value of Debtor's use of 160 acres of the ranch Debtor did not claim exempt ("the nonexempt parcel") to pasture the probate estate's cattle.[8]

Unjust enrichment is an equitable remedy, which the Court has the discretion to grant or deny.  *Hofeldt v. Mehling*, 658 N.W.2d 783, 788 (S.D. 2003) (citations therein).  To prevail, Trustee Lovald must show:  (1) the probate estate and the heirs received a benefit; (2) the probate estate and the heirs were aware they were receiving that benefit; and (3) it would be inequitable to allow the probate estate and the heirs to retain that benefit without paying for it.  *Id.* (citations therein).  To the extent the probate estate and the heirs have been unjustly enriched, they may be ordered to turn over that amount to the bankruptcy estate.  *See Northwest Financial Express, Inc. v. Crown Convenience* (*In re NWFX, Inc.*), 864 F.2d 588, 591 (8th Cir.

_____

lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate."  11 U.S.C. § 542(a).

[7] Trustee Lovald's complaint did not clearly specify unjust enrichment as the basis for the recovery he sought.  In his pre-trial brief, Trustee Lovald clarified he was seeking turnover of "money . . . either owed contractually or as a result of unjust enrichment."  In his post-trial brief, however, he conceded "[t]here is no evidence showing an express contract between Debtor, [the heirs,] and the [probate estate] that Debtor would be reimbursed for unpaid expenses for feeding [the probate estate's] cattle."

[8] The distinction between the nonexempt parcel and Debtor's homestead was drawn by the parties and will be accepted by the Court in this case.

1988).

III.

Before addressing the merits of Trustee Lovald's claim, the Court must first address a preliminary issue. The probate estate and the heirs argue Liebelt's state court lawsuit is *res judicata* and precludes Trustee Lovald's claim against them with respect to the hay. The Court disagrees.

The preclusive effect of the state court judgment is governed by the law of South Dakota. *Nolles v. State Comm. for the Reorganization of Sch. Dists.,* 524 F.3d 892, 901 (8th Cir. 2008) (the res judicata effect of the first forum's judgment is governed by the first forum's law) (citation therein). Under South Dakota law,

> [t]he doctrine of res judicata serves as *claim* preclusion to prevent relitigation of an *issue actually litigated or which could have been properly raised and determined* in a prior action.
>
> For purposes of res judicata, a cause of action is comprised of the facts which give rise to, or establish, the right a party seeks to enforce . . . . [T]he test is a query into whether the wrong sought to be redressed is the same in both actions. Res judicata, which embodies the concepts of *merger* and *bar*, is therefore broader than the *issue* preclusion of collateral estoppel.
>
> Res judicata bars an attempt to relitigate a prior determined cause of action by the parties, or one of the parties in privity, [*sic*] to a party in the earlier suit.

*Black Hills Jewelry Mfg. Co. v. Felco Jewel Ind., Inc.*, 336 N.W.2d 153, 157 (S.D. 1983)(quoted in *Barnes v. Matzner*, 661 N.W.2d 372, 377 (S.D. 2003) (emphasis in original) (citations omitted)). Claim preclusion not only "precludes relitigation of issues previously heard and resolved; it also bars prosecution of claims that could have been raised in the earlier proceeding, even though not actually raised." *American Family*

*Insurance Group v. Robnik*, 787 N.W.2d 768, 775 (S.D. 2010) (citation therein).

Moreover, it applies not only to named parties, but also to those who could have been

named as parties to an earlier action. *Link v. L.S.I., Inc.*, 793 N.W.2d 44, 55-56 (S.D.

2010).

Read broadly and in isolation, these cases appear to suggest – as the probate

estate and the heirs argue – because Debtor did not pursue a third-party complaint

against the probate estate and the heirs in the state court lawsuit, Trustee Lovald –

standing in Debtor's shoes – is now precluded from pursuing his complaint against

them for turnover.[9]  However, such an interpretation would effectively render all third-

party claims compulsory and would thus be contrary to the permissive language of

S.D.C.L. § 15-6-14(a).[10]  In considering the similarly permissive language of S.D.C.L.

§ 15-6-13(g),[11] the South Dakota Supreme Court concluded a cross-claim is *always*

permissive and is *never* compulsory and declined to bar a party who could have

asserted a cross-claim against a co-defendant in one action from pursuing her claim

against the co-defendant in a subsequent action. *Glover v. Krambeck*, 727 N.W.2d

---

[9] A chapter 7 trustee does not acquire any greater rights than the debtor had on the petition date. *Lovald v. Dakota Truck Underwriter* (*In re Fischer Enterprises, Inc.*), Bankr. No. 01-40442, Adv. No. 01-4027, slip op. (Bankr. D.S.D. Jan. 28, 2002) (citations therein).

[10] Pursuant to § 15-6-14(a), "a defending party, as a third-party plaintiff, *may* cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to him for all or part of the plaintiff's claim against him." (Emphasis added).

[11] Pursuant to § 15-6-13(g), "[a] pleading *may* state as a cross-claim any claim by one party against a co-party arising out of the transaction or occurrence that is the subject matter either of the original action or of a counterclaim therein or relating to any property that is the subject matter of the original action."  (Emphasis added).

801, 805-06 (S.D. 2007).  There is nothing to suggest the South Dakota Supreme

Court would not reach the same conclusion regarding a possible third-party complaint.

Consequently, Trustee Lovald is not barred from pursuing his claim against the probate

estate and the heirs.

IV.

*Hay*

Turning to the merits of Trustee Lovald's claim regarding the hay, the Court

finds Trustee Lovald has shown the probate estate and the heirs received a benefit

from the hay.  Debtor fed at least some of the hay to the probate estate's cattle in

2002 and 2003.  The hay thus helped keep the probate estate's cattle alive.  The

benefit to the heirs is more indirect and much more difficult to quantify.  If the probate

estate's cattle – or the proceeds from Debtor's sales of the cattle – are never

distributed to the heirs, it could reasonably be argued keeping the cattle alive did not

benefit the heirs.[12]  However, had the probate estate's cattle starved, there would be

*no* possibility the heirs will ever receive such a distribution.  Keeping the probate

estate's cattle alive also kept alive the possibility the heirs will someday receive either

the probate estate's remaining cattle or the proceeds from Debtor's sales of the

probate estate's remaining cattle.

Trustee Lovald has likewise shown the probate estate and the heirs were aware

the probate estate was receiving that benefit.  Under the family settlement agreement,

Debtor was obligated to care for and maintain the probate estate's cattle.  This would

---

[12] Debtor has sold all but 30 head or so of the probate estate's cattle.  The heirs
have received none of the proceeds.

necessarily include feeding the cattle.  The probate estate was not a party to the family settlement agreement.  However, Laura was, and she was the probate estate's personal representative at the time.  The probate estate and the heirs were thus aware Debtor was feeding hay to the probate estate's cattle.

Trustee Lovald, however, has not shown it would be inequitable to allow the probate estate and the heirs to retain that benefit without paying the bankruptcy estate for it.  Under the family settlement agreement, Debtor was entitled to receive the *net* profit from the probate estate's cattle, after deducting the expenses he incurred in caring for and maintaining the cattle.  Those expenses would necessarily include the cost of feeding the cattle.  Debtor confirmed this when he testified he was "ultimately responsible" to pay for the hay.  Had Debtor paid for the hay, the cost would have been deducted from the gross proceeds of Debtor's sales of the probate estate's cattle, and the net profit would have been reduced accordingly.[13]  However, because Debtor did not pay for the hay, the cost was not deducted from the gross proceeds of Debtor's sales of the probate estate's cattle, and the net profit Debtor received from the probate estate's cattle was artificially inflated by that amount.  Consequently, the probate estate and the heirs have already effectively compensated Debtor for the hay.  It would thus be inequitable to require them to now compensate the bankruptcy estate for it.

---

[13] The record is far from clear regarding precisely what that net profit might be.  However, what is clear (from Debtor's amended answers to Trustee Lovald's interrogatories) is Debtor received more than $20,000.00 from the probate estate between 2002 and 2009.  This is more than the value Trustee Lovald attributes to the hay ($10,000.00) and to Debtor's use of the nonexempt parcel to pasture the probate estate's cattle ($7,344.00).

*Nonexempt Parcel*

With respect to Trustee Lovald's claim regarding Debtor's use of the nonexempt parcel to pasture the probate cattle, Trustee Lovald has shown the probate estate and the heirs received a benefit.  Debtor pastured the probate estate's cattle on the nonexempt parcel – at least part of the time – during the six months of each year he pastured the probate estate's cattle on the ranch.  This, too, helped keep the probate estate's cattle alive.  The benefit to the heirs is the same as the benefit conferred on them by the hay.

Trustee Lovald has likewise shown the probate estate and the heirs were aware they were receiving that benefit.  While the family settlement agreement did not expressly require Debtor to pasture the probate estate's cattle on the ranch, a careful reading strongly suggests that was the parties' intent, and nothing in the record suggests the parties intended or understood otherwise.  As noted above, the probate estate was not a party to the family settlement agreement.  Again, however, Laura was, and she was the probate estate's personal representative at the time.

Trustee Lovald, however, has not shown it would be inequitable to allow the probate estate and the heirs to retain that benefit without paying the bankruptcy estate for it.  Presumably, Debtor and the heirs took the value of Debtor's pasturing the probate estate's cattle on the nonexempt parcel into account when they entered into the family settlement agreement.  Nothing in the family settlement agreement or the record suggests they contemplated – much less intended – Debtor would charge the probate estate separately for doing so.  This is borne out by the absence of any

evidence Debtor filed a claim against the probate estate for pasturing the probate estate's cattle, demanded payment from the heirs for doing so, or otherwise sought reimbursement from either the probate estate or the heirs at any time during the almost six years that preceded his bankruptcy.[14]  Under the circumstances, it would be inequitable to require them to now pay for pasturing the probate estate's cattle on the nonexempt parcel.  Moreover, had Debtor charged the probate estate for pasturing the cattle on the nonexempt parcel, the cost would have been deducted from the gross proceeds of Debtor's sales of the probate estate's cattle, and the net profit would have been reduced accordingly.[15]  As was the case with the hay, the probate estate and the heirs have already effectively compensated Debtor for pasturing the probate estate's cattle on the nonexempt parcel.  It would be even more inequitable to require them to now compensate the bankruptcy estate for Debtor's doing so.

V.

Debtor and his two sons, Douglas and Warren, were all credible witnesses, and the Court believes their explanation of events.  The heirs could have insisted on an immediate distribution of Theresa's personal property, including her cattle.  This would have left their father with a life estate in land and a mobile home worth only $10,000.00 according to Debtor's schedules, a potentially expensive probate contest, and no obvious means of making a living.  Instead, they chose to permit their father

---

[14] The Court also notes nothing in the record suggests Debtor ever charged – or intended to charge – the probate estate or the heirs for pasturing the probate estate's cattle on his homestead, either, even though the probate estate's cattle spent more time pasturing there than on the nonexempt parcel.

[15] *See* fn. 13 *supra.*

to continue managing the ranch.  By allowing Debtor to keep the net profits from the probate estate's cattle, the probate estate and the heirs have already effectively compensated Debtor for both the hay and the use of the nonexempt parcel.  It would not be equitable to require them to now compensate the bankruptcy estate for either.[16] The Court will enter an order dismissing Trustee Lovald's complaint and the counterclaim with prejudice.[17]

Dated: May 25, 2011.

BY THE COURT:

Charles L. Nail, Jr.
Bankruptcy Judge

On the above date, a copy of this document was mailed or faxed to the parties shown on the Notice of Electronic Filing as not having received electronic notice.

Frederick M. Entwistle
Clerk, U.S. Bankruptcy Court
District of South Dakota

NOTICE OF ENTRY
Under Fed.R.Bankr.P. 9022(a)

This order/judgment was entered on the date shown above.

Frederick M. Entwistle
Clerk, U.S. Bankruptcy Court
District of South Dakota

---

[16] Had there been evidence the terms of the family settlement agreement were unreasonable or were intended to thwart the trustee's recovery or defraud creditors, the Court would most likely have reached a different result.

[17] By their counterclaim, Douglas, Warren, Laura, Lorelie, Vanessa, and the probate estate sought a recovery against Trustee Lovald only to the extent of any amount awarded to Trustee Lovald on his complaint.